IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Patrick et al.,
    Plaintiffs,
v.                                                               Civil Action No. 08-1025
FirstEnergy Generation Corp.,
    Defendant.

Price et al.,
    Plaintiffs,
v.                                                               Civil Action No. 08-1030
FirstEnergy Generation Corp.,
    Defendant.

**MEMORANDUM OPINION**

CONTI, Chief District Judge

## I.   Introduction

Plaintiffs seek reconsideration of the portion of the court's memorandum opinion and order that limited the testimony of plaintiffs' expert John A. Kilpatrick ("Kilpatrick"), PhD, in two cases consolidated for discovery, *Patrick v. FirstEnergy Generation Corp.* (No. 08-1025) and *Price v. FirstEnergy Generation Corp.* (No. 08-1030).[1] These cases involve the Bruce Mansfield Power Plant ("Bruce Mansfield"), a coal-fired electric generating facility located along the Ohio River in Shippingport, Pennsylvania. Bruce Mansfield is owned and operated by defendant FirstEnergy Generation Corporation ("FirstEnergy" or "defendant"). The plaintiffs allege harm from air pollution discharged by Bruce Mansfield. The alleged pollution came in the form of "white rain," a chronically discharged corrosive material, and "black rain," a

---

1    The motions for reconsideration are ECF No. 304 (*Patrick*) and ECF No. 211 (*Price*). The court's opinion and order are ECF Nos. 288 and 289 (*Patrick*) and ECF Nos. 196 and 197 (*Price*). Unless otherwise specified, ECF numbers appearing in the text of the opinion refer to the *Patrick* case.

1

dark-colored sooty residue discharged on two occasions in 2006 and 2007. The white rain and black rain were deposited on the area surrounding Bruce Mansfield, allegedly causing property damage and adverse health effects. The named plaintiffs in *Patrick* are four couples who make class-action claims for damages due to diminution of property value and seek to enjoin the plant from operating until it can prevent the white rain emissions. In *Price*, nineteen plaintiffs seek injunctive relief and monetary damages for adverse health effects and property losses.

Kilpatrick is an expert in the field of real estate valuation. Kilpatrick filed an expert report in which he opined about the diminution of property values due to the emissions from Bruce Mansfield and feasibility of determining the damages of the putative class using mass-appraisal techniques. Kilpatrick modeled the diminution in value of residential properties in the areas affected by black rain and white rain using four modeling techniques: telephone and internet surveys, case studies of similar pollution incidents, meta-analysis of previously published research, and hedonic regression analysis of actual property values in the affected areas. As the court previous described, the results of the modeling were as follows:

> The results of the survey research indicated a diminution of 12 percent for properties in the white rain area and 45 percent for properties in one or both black rain areas. [(Kilpatrick Rep. ¶¶ 78, 108, ECF No. 221-5.)] The analysis of case studies most similar to the pollution alleged in this case showed a diminution in value of 20 to 39 percent. (*Id.* ¶ 82.) Three meta-analyses found property value losses of 33, 34, and 76 percent, for an average of 48 percent. (*Id.* at 32, tbl.5.) The hedonic regression analysis of sales transactions found diminution of between 2 and 4 percent for the white rain area and about 14 percent for the black rain area. (*Id.* ¶ 100.)
>
> To reconcile the approaches, Kilpatrick performed an "implicit weighting process … based on the quality and quantity of data coming from" the four methodologies. (Hr'g Tr. 126:22–25, Oct. 15, 2013, ECF No. 259.) He concluded that the hedonic model based upon sales prices should be given little weight because the market was

> uninformed about the extent of the contamination and that the 14 percent figure represented a "lower bound" estimate for properties in the black rain areas. (Kilpatrick Rep. ¶¶ 101–05.) After considering the similar results of the surveys, case studies, and meta-analyses, Kilpatrick opined that the overall diminution in value was 12 percent for the white rain area and 45 percent for the black rain area. (Hr'g Tr. 127:12–17, Oct. 15, 2013.) Kilpatrick concluded that a mass appraisal is the best technique for determining valuation and damages in this case. (Kilpatrick Rep. ¶ 108.)

(Mem. Op. 6–7, ECF No. 288.)

Defendant moved to prevent Kilpatrick from offering his opinions under Rule 702 of the Federal Rules of Evidence. After extensive briefing and a hearing with testimony and oral argument, the court granted the motion in part. The court determined that Kilpatrick's white rain model did not meet the reliability requirement of Rule 702. The white rain survey questions were unreliable because they referred to contaminants and hand-washing and home-produce advisories that were only relevant to the black rain. (*Id.* at 11.) Kilpatrick's calculation of unimpaired property values in the white-rain area was flawed because he used a cut-off date of July 22, 2006—the date of the first black rain event—even though he had no factual basis to support his assumption that this date was "'before people began to be significantly annoyed by the white rain.'" (*Id.* at 24 (quoting Hr'g Tr. 144:19–20, Oct. 15, 2013, ECF No. 259).) The court excluded the white rain opinion in its entirety. (*Id.*)

Kilpatrick concluded that the residential real estate market in the area affected by black rain was uninformed about the significance of the contamination. Therefore, he explained that the "market value" of the affected properties—that is, the true value of properties when both buyer and seller are informed—is less than the "market price" reflected in actual property sales. The court noted it could not resolve at that time the factual dispute between the parties about whether or to what extent the market was uninformed. (*Id.* at 20.) The court found, however, that

Kilpatrick's opinion about property values in the black rain area was unreliable because he was unable to explain how the market would become informed, leading to market price equaling market value. (*Id.* at 22.) The court excluded Kilpatrick's black rain opinion to the extent he opined "about hypothetical 'market value' diminution above 'market price' losses." (*Id.*) The court permitted Kilpatrick to give his opinion about the diminution in property value from black rain based upon his modeling of actual prices. Kilpatrick's case studies and meta-analyses were ruled admissible as background support, but not as evidence of actual loss. (*Id.* at 28.)

## II. Standard of Review

The court may grant a motion for reconsideration if the party seeking reconsideration establishes one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). In this case, plaintiffs seek reconsideration based upon the need to correct clear error and prevent manifest injustice. (ECF No. 298, ¶ 5.) A finding of clear error is appropriate when the record supports "'the definite and firm conviction that a mistake has been committed.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 345 (3d Cir. 2013) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).

Because of the interest in finality, district courts grant motions for reconsideration sparingly—the parties are not free to relitigate issues the court has already decided. *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992); *see Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) ("[A] motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly.").

## III. Discussion

### A. *Black Rain Opinion*

Plaintiffs argue Kilpatrick had good grounds for concluding that the market was uninformed about the black rain incidents and therefore the court erred by excluding his conclusion that properties in the black rain area suffered a loss in market value above the loss in market price. (Pl.'s Mot. 6–7, ECF No. 304.) Plaintiffs assert the court's opinion about "the reasonable duration of market lag time and stigma is based upon an inadequate record" because the numerous applicable factors were never "properly presented, briefed or argued." (*Id.* at 7.) Plaintiffs request that the court "allow an evidentiary record on the specific topic of market lag" to clarify the issue. (*Id.* at 8.) Plaintiffs assert that "Kilpatrick's conclusion of an uninformed market creating market lag deserved testing through the adversarial process rather than complete exclusion." (*Id.* at 9.)

The arguments advanced by plaintiffs are insufficient to justify reconsideration. When the court asked Kilpatrick when he expected market price and value to intersect, he said he "wouldn't expect it would take long." (Hr'g Tr. 145:17, Oct. 15, 2014, ECF No. 259.) He referenced a case from Wyoming, Michigan, where prices stagnated in two years after there was full knowledge in the market. (*Id.* at 145:18–21.) The court noted in its opinion that the black rain events occurred more than six years ago and found it unreasonable to assume that knowledge would become widespread after this amount of time had passed. (Mem. Op. 22, ECF No. 288.) Plaintiffs point out that the surveys were conducted in March 2010, just two and a half years and three and a half years after the black rain incidents. (Pl.'s Mot. 6, ECF No. 304.) The date of the surveys, however, is not the relevant point for determining whether market value and market price have coalesced. The relevant consideration is the sales transaction data used in the regression analysis. Kilpatrick used sales data from transactions that occurred between April 1992 and March 2012. (Kilpatrick Rep. ¶ 40, ECF No. 221-5.) In Kilpatrick's Rebuttal Affidavit, he states

5

that the mass appraisal model includes data from 2002 to 2011. (Kilpatrick Rebuttal Aff. ¶ 16, ECF No. 235-8.) The sales data encompassed a period of at least five years after the July 2006 black rain event, but Kilpatrick did not point to sufficient evidence showing that market knowledge is increasing.

Plaintiffs bore the burden of establishing the reliability of their expert's testimony by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999). They failed to carry this burden. Plaintiffs cannot now, on a motion for reconsideration, seek an evidentiary hearing to bolster their case. *See Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 574 (E.D. Pa. 2008) ("A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one."). Moreover, other courts that considered the uninformed market theory advanced by Kilpatrick found it unreliable. *See Palmisano v. Olin Corp.*, Civil No. 03-1607, 2005 WL 6777561, at *5 n.5 (N.D. Cal July 5, 2005) ("The court has serious concerns with the degree of speculation Kilpatrick's theory entails. If plaintiffs could recover for a decline in value that had not yet been reflected in prices, they could sell their homes immediately and receive a windfall: damages for as-yet realized diminution in value plus the full market price."); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 104 (Md. 2013) (finding the level of speculation about when market price will reflect market value too great for the testimony to be admissible).

For these reasons, the court finds that excluding Kilpatrick's testimony about the hypothetical loss in market value above that reflected in market prices was not based upon a clear error of law or fact.

### B. White Rain Opinion

Plaintiffs argue the court erred by excluding Kilpatrick's white rain opinion. According to plaintiffs, the court "misperceived the economic concept of willingness to pay," and, in light of the willingness to pay concept, the white rain survey questions were not misleading or unreliable. (Pl.'s Mot. 5, ECF No. 304.) Plaintiffs

assert that white rain has harmful constituents similar to those found in black rain and that the argument that white rain is not as damaging as black rain is a factual dispute between the parties. (*Id.* at 3–4.) The key factor plaintiffs point to is the impact on value by perceived risk. (*Id.* at 5.) Because the warnings issued after the black rain event in July 2006 increased the perceived risk in the white rain areas, plaintiffs argue the incorporation of black rain warnings in the white rain survey questions was not a fundamental flaw. (*Id.*) Kilpatrick applied his experience and determined that there was no need to redo the survey in light of the information included in the white rain survey questions. (Kilpatrick Dep. 455:21–456:1, Mar. 22, 2013, ECF No. 235-14.)

Plaintiffs' argument with respect to the court's finding that the calculation of the unimpaired value in the white rain area was unreliable is similar to the perception argument raised above. Plaintiffs argue reconsideration is appropriate because the tax assessments did not capture any disamenity due to white rain until after the black rain occurred. (Pl.'s Mot. 11, ECF No. 304.) The black rain triggered the negative perception of white rain that led to the diminution found by Kilpatrick. Again, plaintiffs note the existence of a factual dispute between the parties about the amount of knowledge in the market about white rain. (*Id.*)

None of these arguments leave the court with the "definite and firm conviction" its previous opinion was mistaken. *Johnson*, 724 F.3d at 345. The court has no trouble understanding the concept of willingness to pay. The problem for the court is plaintiffs' argument that the perceived risk of white rain changed after the black rain events. Plaintiffs argue that the market was uninformed with respect to the black rain events, yet the black rain events triggered a loss in value in the white rain zone. In addition, Kilpatrick testified that he had no basis for his assumption any disamenity

7

due to white rain would not have been captured in the tax assessments.[2] (Hr'g Tr. 144:15–23, Oct. 15, 2013, ECF No. 259.)

## IV. Conclusion

Plaintiffs failed to demonstrate a clear error of law or fact in the court's opinion (ECF No. 288). No other basis for reconsideration exists. Plaintiffs' motions will be denied. Appropriate orders will be entered.

   Dated: October 27, 2014                 /s/ Joy Flowers Conti
                                                       Joy Flowers Conti
                                                       Chief United States District Judge

---

2    After the hearing, plaintiffs submitted a supplemental affidavit in which Kilpatrick explained his answer to the court's question about the basis for his assumption. Kilpatrick stated that the reason for his assumption that the tax assessments did not capture the disamenity of white rain was the lack of disclosure by sellers. (Kilpatrick *Cannon* Aff. 3, ECF No. 259-1.) This raises the same issue that is present in the black rain analysis. (*See id.*) If the market is uninformed, when, if ever, will it become informed so that market prices equal market values? Plaintiffs presented no sufficient answer to this question.